JOSÉ LUIS VIVALDI, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1388. Decided November 30, 1962.

*Luis López de Victoria* for appellant. The Registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Sabbina Brigantti Lacorte executed an open will in which, after setting forth that she had no descendants or ascendants, she stated that her hereditary estate consisted of the following properties: a) a house located in Mattei Lluberas Street, in Yauco; b) the furniture of the aforesaid house and, c) a deposit certificate for the sum of $600 executed by the Banco Crédito y Ahorro Ponceño. She set forth 1) that the sum of the deposit certificate was to be used to cancel a mortgage credit which encumbered the aforesaid house, and which had been approximately reduced to said sum; 2) that she bequeathed to Silveria Rosario the furniture and household goods of her residence and 3) "the testatrix bequeaths the urban property..., that is, the house with the right to the lot on which it stands, to the following persons and in the following proportion:" a one-fourth interest in the property, to each, Silveria Rosario and Irving Rosario, and a one-eighth interest in the property to each one of her sisters, María and Antonia, and to her brother Rafael, and to her sister-in-law Corina Vélez. Finally she pointed out that "in the remainder of all her property, rights and shares, the testatrix appoints and names the afore-mentioned persons" as her sole and universal heirs in the same proportion in which she bequeathed them the urban property.

After the testator's death the corresponding property was recorded in favor of the above-mentioned persons, as a legacy, and in the proportion provided by the will. By deed No. 1 of January 5, 1949 executed before Notary Angel Padró, Corina Vélez transferred to María Brigantti "any interest, right and share which correspond or might correspond her in the [afore-mentioned] property, as the *testamentary heiress* of Sabbina Brigantti Lacorte." Two years later, María Brigantti sold to José Luis Vivaldi a one-half interest

in said house which comprised the one which she had acquired by purchase from her sister-in-law, Corina. After presenting a certified copy of the first deed of transfer, the Registrar of Property of San Germán denied its registration on the ground that the vendor merely transfers her rights and shares as testamentary heir and not as legatee as it was established in the will. Consequently, he likewise denied the registration of the sale in favor of Vivaldi as to a share of one-eighth interest in the property, because it was not recorded in favor of the vendor.

■ Actually, although it refers to a particular property, it is undeniable that it concerns an appeal to the universality of the remaining estate, similar to a legacy of an aliquot share—since it rests, we repeat, on the sole asset of the inheritance—we shall refer briefly to this juridical figure. The effect of the provision when it is considered *jointly* with the clause on the designation of heirs, is to distribute the inheritance among the various designated parties by assigning indeterminate shares.

I

The figure of the legacy of an aliquot share [1] has given rise to heated debates in Spanish doctrine, depending to a great extent on the view sustained, either subjective or objective, as to the manner of determining the character of heir or legatee. No mean contribution has been the hesitation observed in interpretative case law and the evident weakness of legislative recognition on which the advocates of such figure have relied. That is why it has merited such adjectives as "strange, ambiguous, and baffling."

■■ Before pointing out the principal points adduced in this issue, it is necessary to set forth briefly what is understood by a legacy of an aliquot share, and to explain broad-

[1] It is also termed partial legacy. BORRELL Y SOLER refers to the same as a hereditary legacy. 5 *Derecho Civil Español* 197 (Bosch Ed. 1954).

We briefly referred to the legacy of an aliquot part in footnote No. 13 of the opinion delivered in *Piazza* v. *Piazza*, 83 P.R.R. 398 (1961).

ly the thesis proposed by the subjectivists and objectivists. OSSORIO MORALES [2] defines the legacy of an aliquot part as "a legacy, the contents of which are determined by the testator as an arithmetical fraction of his total patrimony, as abstract part and ideal or share thereof." MANRESA [3] points out that "it is that by which the testator disposes under specific title of a proportional part of his inheritance." Generally, the authors point out as its characteristic trait the share which the beneficiary has of one part in indeterminate property of the estate. [4]

CASTÁN [5] compares the aforesaid systems saying that "the Roman, with *subjective* tone, who considers an heir the successor designated by the testator as such heir, independently, in principle, of the fact that he is instituted in all the inheritance, in an aliquot part thereof or in a specific and certain thing, and the *Germanic* or *modern*, with *objective* earmark, who considers as an heir whoever is appointed by the deceased to acquire the totality or universality of the juridical relations object of the transfer, whether or not he is designated as heir." It is clear that the first criterion attributes a great significance to the intent of the testator as expressed in his last will, maintaining its decisive efficacy for the determination of the concept, whether as heir or legatee; in the second, the controlling element of the hered-

---

[2] *Estudios de Derecho Privado* 118 (Bosch Ed. 1942).

[3] VI MANRESA, *Comentarios al Código Civil Español* 702 (7th ed. 1951).

[4] DE CASSO AND CERVERA point out in their *Diccionario de Derecho Privado* 2446 (1954), that the legacy of an aliquot part is a variation of that of quantity, but this position is challenged by the greater part of the doctrine. See the Judgment of January 2, 1920 (149 *Jurisprudencia Civil* 11, 17) where the difference is established between a legacy of specific and certain character—of every object of art, picture and furniture—and the legacy of an aliquot part, which is identified with the concept of "indetermined and proportional and even arithmetical." The characterization that we made of a legacy of an aliquot part in *Junghanns v. Cornell University*, 71 P.R.R. 630, 641 (1950), when we referred to a legacy of the entire real property of a testator, is thus inaccurate.

[5] 6-1 *Derecho Civil Español, Común y Foral* 74 (7th ed. 1960).

itary succession is the contents of the inheritance. The subjectivists invoke the provisions of §§ 668 [6] and 675 [7] of the Spanish Civil Code, equivalent to §§ 617 and 624 of Puerto Rico, 31 L.P.R.A. §§ 2122 and 2129—the intention of the testator shown by the terms of the designation—the objectivists find support in §§ 660 [8] and 768 [9] of the aforesaid legal body, similar to §§ 609 and 697 of Puerto Rico, 31 L.P.R.A. §§ 2091 and 2286—the nature of the designation.

■ The different positions of Spanish doctrine respecting the legacy of an aliquot part may be summarized thus: A) those who admit its existence as an independent juridical figure, relying on the grounds that 1) in the concept of heir the will of the testator is integrated, as a subjective element, and therefore, there is a legacy of an aliquot part whenever the deceased assigns to a person a portion of his inheritance without simultaneously attributing to him the designation of heir, a thesis which is supported, among others, by ROCA SAS-

---

[6] Section 668 of the Spanish Civil Code provides the following:

"The testator may dispose of his property either under title of inheritance or under that of legacy.

"In case of doubt, even if the testator has not actually used the word 'heir', if his intention is clear on this point, the estate shall descend as granted by universal title or by inheritance."

[7] Section 675 of the Spanish Civil Code provides the following:

"Every testamentary provision shall be understood in the literal sense of its words, unless it clearly appears that the intention of the testator was different. In case of doubt, the interpretation which appears to be the one most nearly in accordance with the intention of the testator, according to the tenor of the will, shall be adopted.

"A testator can not prohibit the contest of his will in the cases in which the law declares it to be void."

[8] Section 660 of the Spanish Civil Code provides the following:

"An heir is a person who succeeds by universal title; and a legatee one who succeeds under a particular title."

[9] Section 768 of the Spanish Civil Code provides the following:

"An heir to whom a certain and specified thing is left shall be considered a legatee."

TRE,[10] TRAVIESAS,[11] and NUÑEZ LAGOS; [12] 2) the fundamental difference which is pointed out between the heir and the legatee from the viewpoint of personal or unlimited (ultra vires) responsibility by reason of the testator's debts, for as PUIG BRUTAU,[13] indicates, the former is appointed to the predecessor's whole inheritance, in its assets and liabilities, while the latter is only appointed to a portion of the resulting assets once the inheritance has been settled, without incurring any personal responsibility if the liabilities exceed the capital; B) those who deny the legacy of an aliquot part, alleging that, since the designation as heir is always the appointment to the whole, to an abstract portion of the hereditary universality, such a partial legacy does not fit into our system. The main exponents of this position are OSSORIO MORALES,[14] DÍAZ CRUZ,[15] BONET RAMÓN,[16] FERRARA [17] and MANRESA.[18]

[10] II *Estudios de Derecho Privado*, Ed. Revista de Derecho Privado 181 *et seq.* (1948).

[11] *Los Legados*, XVIII *Revista de Derecho Privado* 145 (1931).

[12] *El Derecho Sucesorio ante la Tradición Española y Código Civil*, 189 *Revista General de Leg·slación y Jurisprudencia* 385, 408 (1951).

[13] V–1 *Fundamentos de Derecho Civil* 82 *et seq.* (Bosch Ed. 1961), particularly at 99, 103.

OLAVARRÍA TÉLLEZ alludes to this difference in his Annotation *Notas sobre el Legado de Parte Alícuota*, XXXVII *Revista de Derecho Privado* 397, 415 (1953), with the following words: "The specific and characteristic trait of such legatee before the heir lies, not in that the former has his liability limited by the assets which correspond him, but in that he is not liable, that is, is not bound."

[14] *Estudios de Derecho Privado* 117, 153 (Bosch Ed. 1942).

[15] *Los Legados*·483, 491 (Reus Ed. 1951). ·

[16] XXV*Revista de Derecho Privado* 40, 42 (1941).

[17] *Estudio sobre la sucesión a título universal y particular, con especial aplicación a legislación española*, X *Revista de Derecho Privado* 322 (1923), where the author, in evident refutation of the spiritualist or subjective regime, states that "the title given by the testator to the beneficiary and the wording used in the designation, is not, of itself, of any importance. There may be a declaration of an heir even if the testator might say I bequeath or leave my property to Tizio, as he could have bequeathed even when the testator names an heir to a specific property." (At p. 329(1) *in fine.*)

[18] VI MANRESA, *op. cit.*, p. 130.

Those who subscribe to the theory of the legacy of an aliquot part refer to the provisions of §§ 1038, 1049, 1055, 1056 and 1065 of the Law of Civil Procedure, which expressly mentions it in including the legatees of an aliquot part among the persons who may institute and be a legitimate party in the voluntary testamentary proceedings,[19] as the basis of positive law to warrant its existence. Section 655 of the Spanish Civil Code is also invoked (§ 597 of Puerto Rico, 31 L.P.R.A. § 2052) as an acknowledgment a *contrario sensu* of the above-discussed juridical figure when providing in its first paragraph that "the reduction of gifts can be demanded only by the persons who have a right to a legal portion or to an aliquot part of the estate and their heirs or legal representatives," and later adding in the following paragraph that "the legatees who are not to receive an aliquot part... can not request the reduction or derive any benefit therefrom." It is said indirectly that reference thereto is made by paragraph No. 7 of art. 42 of the previous Spanish Mortgage Law,[20] which is similar in its language to our art. 42, 30 L.P.R.A. § 91, which authorizes the cautionary notice of his right in the registry to the "legatee who under the law does not have the right to institute testamentary proceedings,"[21] that is, pursuant to the afore-cited provisions of the Law of Civil Procedure, and who can be no other but the legatee not of an aliquot part.

However, when these either express or indirect legal references to the legacy of an aliquot part, are carefully analyzed, their effectiveness as a basis for sustaining their existence vanishes to a large extent. Thus, OSSORIO MORALES

---

[19] Section 23 of the Special Legal Proceedings Act of March 9, 1905, 32 L.P.R.A. § 2361, authorizes any legatee, without any distinction to apply for the judicial administration of the property of a deceased.

[20] The existing Spanish Regulations provides in its art. 152 that for the purposes of the cautionary notices of legacy "the legatees of an aliquot part *shall be considered assimilated* in all cases to the heirs."

[21] In Puerto Rico, by virtue of what was stated in the previous footnote 19, this provision is ineffective for all practical purposes.

as well as DÍAZ CRUZ, in the afore-cited texts, point out with sweeping logic, that the references in the Law of Civil Procedure have very little value in the face of the silence of the Civil Code, since it concerns a legal body which existed before said Code, and they argue that the existence or non-existence of the figure is a question of substantive law, not of a simple procedural order, and that it can not prevail before an opposing criterion expressed in the Civil Code. They immediately attack the reference contained in the afore-cited § 655 and show that it lacks common sense which may only be attributed to an error of the legislator since the afore-cited provision has no other purpose than authorizing the reduction of the inofficious gifts and the enumeration contained therein of the persons who may and those who are forbidden to ask for the reduction, is superfluous because it is known that such power rests exclusively with the forced heirs, the only ones who may be prejudiced by inofficious gifts.[22] Furthermore, it is noted that the aforesaid section, literally copied from § 1092 of the Italian Civil Code, incurs in an error of translation and adaptation, for although the latter justifies that the reduction of gifts should rest with "those in whose favor the law reserves the legal portion *or another portion of the estate*" (erroneously translated by the Spanish legislator as "aliquot part") because the reserves include the legal portion in a strict sense—in favor of the legitimate descendants and ascendants—as well as other hereditary rights in favor of the widowed spouse and of the natural children, such provision is unnecessary in Spain where the widower and the natural children have the status of forced heirs. Finally, the reference in art. 42 of the former Mortgage Law has no ulterior scope for it obeys to the wish of harmonizing with procedural law, and therefore suffers the same

[22] PUIG BRUTAU, *op. cit.*, p. 84, expressly admits that the oft-mentioned provision of the Civil Code does not constitute sufficient grounds to support the existence of the legacy of an aliquot part, and undoubtedly attributes this "to a legislative error."

weakness that was pointed out in discussing the afore-cited provisions of the Law of Civil Procedure.

As we set forth at the beginning of this opinion, the position of the Spanish case law on the legacy of an aliquot part has been hesitant and vague; that is why the exponents of this juridical figure as well as those who acknowledge its existence and insist that it concerns a true heir, frequently invoke different pronouncements to support their respective views. However, a doctrine may be outlined, which in general terms,[23] recognizes that it is venturesome to establish an absolute identity between the heir and the legatee of an aliquot part,[24] but that the juridical treatment of both offers "multiple aspects of coincidence" by the common trait of "attributing property indeterminately" and by equal participation in the responsibility concerning partition expenses,[25] labelling such a legatee as "an intermediate or *sui generis* figure between the legacy and the inheritance as such." [26] In controversial statements which have been the

---

[23] In addition to the judgments to which we shall expressly refer, the following may also be consulted: January 15, 1918 (142 *Jur. Civ.* 110); October 18, 1917 (141 *Jur. Civ.* 461); February 11, 1903 (95 *Jur. Civ.* 278); and June 14, 1898 (84 *Jur. Civ.* 508).

[24] The Decision of the General Directorate of Registries, of November 4, 1935 (VII ROCA SASTRE and MOLINA JUYOL, *Jurisprudencia Registral* 699), in which the first "whereas" reads: (at p. 705):

" . . . in the majority of the modern codes as well as in national and foreign doctrine the prevailing rule considers the legacy of an aliquot part as a true provision of universal character, to the point of considering that the person called an heir does not qualify as such if he is not left the patrimony of *cujus*, but only the person who acquires it in its entirety or in a mathematical portion, although he has not been appointed as heir, since the designation should not be bound by the words, but derived from the very substance of the provision, so that, whatever the words employed by the testator, the successor in the universality of the property or of one-fourth part thereof shall be recognized as the heir, and any other favored person shall have the status of legatee."

[25] Judgments of October 16, 1940 (copied in PUIG BRUTAU, *op. cit.*, pp. 90, 91); February 28, 1949 (III-25 *Jur. Civ.* 793, 816); and January 11, 1950 (III-29 *Jur. Civ.* 140).

[26] Judgment of January 11, 1950, *supra*, p. 152.

object of severe criticism it has been indicated that among the points of coincidence "it is fitting to indicate that of the liability for hereditary debts, in the case of a legacy of an aliquot part in full ownership or in naked property, which has not been excluded from them by the testator, since the heir so appointed acquires, by the very nature of the appointment, a condition similar to that of heirs by inventory, because if with relation to the successors the net property resulting after the deduction of charges constitutes the inheritance estate, the superseded legatee of an aliquot part, as well as the heir, at the liquidation of the hereditary estate, shall participate in them to the extent of his net property and not more."[27]

To conclude this superficial incursion into the controversial figure of the legacy of an aliquot part,[28] we copy below a paragraph from the commentary of OSSORIO MORALES [29] to the Judgment of October 16, 1940, which in our opinion, represents a realistic approach to the question raised because it aims to harmonize the basic propositions in which the subjectivists and the objectivists are based:

"Certainly, there is no doubt that the will of the testator is the fundamental law of the estate, but it seems quite hazard-

---

[27] Judgment of October 16, 1940, *supra*.

[28] For those interested in a more elaborate survey of this interesting question, we recommend reading the following authors, to which we have not specifically referred so as not to unduly lengthen this opinion: DE BUEN, notes to the translation of *Curso Elemental de Derecho Civil*, by 8 COLIN Y CAPITANT 345 (3d ed.) ; 3 MORELL, *Comentarios a la Legislación Hipotecaria* 135 (2d ed. 1928) ; ESPÍN CÁNOVAS, *Manual de Derecho Civil Español, Ed. Revista de Derecho Privado* 13 (1957) ; V VALVERDE, *Tratado de Derecho Civil Español* 326 (4th ed. 1939) ; III DE DIEGO, *Instituciones de Derecho Civil Español* 513 (1959) ; 6 SÁNCHEZ ROMÁN, *Estudios de Derecho Civil* 1298 (2d ed. 1910) ; ESPINAR LAFUENTE, *La Herencia Legal y el Testamento* 223 (Bosch Ed. 1956) ; ORTEGA PARDO, *Heredero Testamentario y Heredero Forzoso*, 3 *Anuario de Derecho Civil* 321 (1950) ; VALLET DE GOYTISOLO, *Imputación de Legados Otorgados a favor de Legitimarios*, 32 *Revista de Derecho Privado* 315, 316 (1948).

[29] 169 *Revista General de Legislación y Jurisprudencia* 150–151 (1941).

ous to admit that that will might alter the objective views which show the existing difference between the appointment of heir and the legacy. Actually, it is easy to establish that the contradiction between § § 660 and 768, in the one hand, and § § 675 and 668 in the other hand, is more apparent than real, and that when the latter provide that the intent of the testator is the controlling rule for interpreting the will, they do not change the objective criterion that the Supreme Court itself recognizes (subdivision a) as scientifically better founded, of following its own content to qualify the testamentary provision. Sections 668 and 675 of the Civil Code refer in case of doubt to the intent or will of the testator. The former, in providing that 'in case of doubt, even it the testator has not actually used the word heir, if his intention is clear on this point, the estate shall descend as granted by universal title, or by inheritance'; the latter, in providing that 'every testamentary provision shall be understood in the literal sense of its words, unless it clearly appears that the intention of the testator was different,' adding that 'in case of doubt, the interpretation which appears to be the one most nearly in accordance with the intention of the testator, according to the tenor of the will, shall be adopted'. The decisive factor is always the intention, what was intended by the predecessor, but in our opinion, within the *objective* criterion which has served as basis to the legislator for establishing the distinction between heir and legatee, a criterion which the individual intention cannot change. That is, what these rules establish is that the declaration of intention by the predecessor is not subject to the formal rigor which Roman Law imposed, and consequently, that it is neither necessary nor sufficient that the testator has employed the terms *heir* or *legatee* in order that his provisions be considered as such, but that it is necessary to find out *whether he has actually wished* to designate an heir or to establish a legacy. But in order to determine this, it will be necessary to follow the content which he has wished to give his provision and to check whether his purpose has been to attribute to a person the universality or a portion of his estate, in which case the latter shall be an heir, either one or various determined relations in which event he shall be legatee. As Ferrara states, referring precisely to Spanish Law, 'the intention of the testator is worthless if that intention is not made into a congruent provision of the *universum ius*,' thereby

saving the contradiction which several authorities, and now the Supreme Court, believe exists between § 668 of the Code which follows the intention of the testator, and § 768, which in order that the provision may qualify, follows the manner of disposing, that is, the manner in which the property is bequeathed. This last section makes no abstraction of the *intention* but of the *words* employed by the testator, since it states that, although the testator has employed the term *heir*, if a specific thing has been left to him, he shall be a legatee, in perfect congruence with § 668, since there being a contradiction between the words and the context of the testamentary provision—and this context revealing that the intention of the testator was to leave a concrete thing, that is, to make a particular transfer—it settles it by giving preference to the intention. Likewise, when a designation is made of an aliquot part whatever formula is employed by the testator, and although he might have used the word legacy in disposing of an abstract portion, of an ideal unit—independent of its material context— the testator has revealed *that his intention was to transfer a universality*, to make a transfer by universal title, and consequently, to designate an heir. It should not be forgotten that, as stated by Danz, the *juridical results* are not produced because the interested intention pursues them, but because objective law attributes them to those statements of individuals by which they intended to accomplish specific economic or social purposes." (Italics ours.)

## II

■ Our case law subscribes to the theory of discarding the sacramental value of words to follow more closely the intention of the testator than their literal meaning. *Luce & Co.* v. *Cianchini*, 76 P.R.R. 155, 161 (1954). As, in *Junghanns* v. *Cornell University*, 71 P.R.R. 630 (1950), notwithstanding the use of the words "devise" and "bequeath"— which in American law denote the presence of a legacy— since in the corresponding clause the universality which constituted the hereditary estate and not a specific and definite thing was transmitted, we held that it concerned a designation by universal title and not by specific title, making the party in question an heir, which position reveals a clear objectivist

criterion in the consideration of the designation. In *Blanch* v. *Registrar*, 59 P.R.R. 726 (1942), we employed the same criterion in expressing that even though the testator used the word "bequeath" in disposing of all his property, his intention to designate his sister as heir was evident, and it was decided that the appointment was made by the *universum ius*, to which FERRARA refers. See also, *Torres* v. *Heirs of Caballero*, 39 P.R.R. 654 (1929).

 After considering all the clauses of Sabbina Brigantti's will as a whole, and even if we admit the legacy of an aliquot part in opposition to the heir, it is necessary to conclude that the designation in favor of the different persons already mentioned in the proportion indicated, is actually a designation of heirs under a universal title, even when the word "bequeath" was used for that purpose. It is appropriate to point out that the appointment refers to the remainder of the property, once the generic legacy of the furniture is deducted, and that it comprises the universality of the remaining estate. *Cf.* Judgment of October 18, 1917 (141 *Jur. Civ.* 461, 467). See footnote 10 of the opinion delivered in *Díaz* v. *Luciano*, 85 P.R.R. 804 (1962). Besides, if there could be any doubt on that score, the intention of the testator is patently manifest in the additional clause in which she designates the so-called "legatees" as heirs in the same proportion which she had indicated in disposing of "the legacy." The title of acquisition is of an inheritance, not a legacy.

In view of the foregoing, the notes appealed from will be reversed, and the registration requested will be ordered.